HEARD NOVEMBER TERM, 1874.

## McLARIN *vs.* KNOX & CUNNINGHAM.

Where a will is on record in the proper probate office, a purchaser of real estate of the testator is affected with notice of its contents.

An annuity given by the will of testator: *Held* to be a charge upon his real estate.

J. M., being the owner of property held subject to an annuity to his sister for life, devised and bequeathed his whole estate to her for life, and appointed her executrix. She qualified as executrix and took possession of and enjoyed the estate: *Held*, That the annuity had merged in the devised and bequeathed estate.

BEFORE COOKE, J., AT ABBEVILLE, JUNE TERM, 1874.

This was an action by Janet H. McLarin against Knox & Cunningham to subject certain real estate to an annuity bequeathed to the plaintiff by John McLarin, Sr., deceased, whose will is as follows:

" I devise and bequeath my whole estate, real and personal, to Agnes McLarin, widow of my brother, during her lifetime, and at her death to my nephew, John McLarin, Jr., his heirs and assigns forever, in fee simple.

" It is further my will and testament that my nephew, John McLarin, Jr., shall pay, out of the estate hereby given to him, to my niece, Janet McLarin, the sum of $200 annually during the lifetime of the said Janet McLarin, which annuity shall not be charged on the estate hereby given to the said John McLarin, Jr., nor the said Janet H. McLarin be entitled to the same until after the death of the said Agnes McLarin and the termination thereby of her life estate in the property above devised and bequeathed."

The will was the only paper found in the probate office of Abbeville County connected with the estate of John McLarin, Sr. There was no mark of probate upon it, but in the record book of wills it was copied, and at the foot of the copy were these words: " Proved by the oath of James H. Cobb, 19th June, 1837." James H. Cobb was one of the attesting witnesses.

The rest of the case is stated in the judgment of the Circuit Court, which is as follows:

COOKE, J. John McLarin, Sr., executed his last will, bearing the date of the 6th of June, 1837, and soon thereafter departed this life. The testator omitted to nominate an executor of his will, but the will was proved in common form by one of the attesting witnesses.

Letters of administration with the will annexed were never granted, and it did not appear they had ever been applied for.

At the time his will was made, and at his death, the testator was seized and possessed of two lots in the town of Abbeville and a tract of thirty-one acres contiguous to the town, besides a few slaves and other personal property, all of which he devised and bequeathed to his sister-in-law, Agnes McLarin, during her life, and at her death to his nephew, John McLarin Jr., in fee simple.

The will of the testator required that his nephew, John McLarin, should pay out of the estate given to him two hundred dollars annually to the plaintiff, a niece of the testator, during her life, but provided that that legacy should not be a charge on the estate given to his nephew, John McLarin, until the death of Agnes McLarin, and that the plaintiff should not be entitled to the same until that event.

Agnes McLarin, the life tenant, died the first day of January, 1851, and the estate of the testator, real and personal, passed immediately into the possession of John McLarin, Jr., with whom the plaintiff resided until his death, the 24th of April, 1864.

A short time before his death, John McLarin, Jr., executed his will and gave to the plaintiff his whole estate, real and personal, during her natural life, charged with large pecuniary legacies to some of his other relatives, and nominated the plaintiff executrix, and John McBryde and Robert J. McBryde executors of his will, all of whom qualified, returned inventories and made sales of most of the personal estate of their testator, and paid debts and pecuniary legacies.

On the 9th of March, 1861, James Wilde, Jr., & Co. obtained judgment for the sum of $2,104.26 against John McLarin, Jr., which, after his death and about the time of the sale of the homestead lot devised to John McLarin, Jr., was assigned to the defendant, John Knox, for the sum of $3,500.

On sale day in April, 1867, the house and lot were sold by the Sheriff of Abbeville, and bid off by John H. Wilson, Esq., attorney of James Wilde, Jr., & Co., under the execution of the latter, at the price of $2,535, but the deed of conveyance was made by the Sheriff to the defendant, John Knox.

In August, 1869, John Knox conveyed to his co-defendant, Joel J. Cunningham, a moiety of the house and lot.

At a sale subsequently made by the Sheriff of Abbeville, the defendants became the purchasers jointly of the remainder of the real estate devised by John McLarin, Sr., to John McLarin, Jr., which was sold under the judgment and execution of James Wilde, Jr., & Co. against John McLarin, Jr., which had been assigned to the defendant, John Knox, all of which real estate was in the possession of the defendants at the commencement of the plaintiff's action on the 19th of September, 1870.

The plaintiff's action seeks to recover the legacy of two hundred dollars annually, with interest, from the 1st of January, 1851, the time of the death of the life tenant, Agnes McLarin.

To the counter claim of the defendants the plaintiff demurred, and the demurrer was sustained by my predecessor, Judge Orr.

I am of opinion that the legacy to the plaintiff, under the will of John McLarin, Sr., is a charge upon the real estate devised to John McLarin, Jr., and which was in the possession of the defendants at the commencement of this action, but that her right to receive is limited to the four years next preceding the commencement of her action and the years subsequent thereto.

It is therefore adjudged and decreed that the defendants do pay to the plaintiff the sum of $1,782.20, being the amount of the legacy of $200 annually given to her by the will of John McLarin, Sr., and of the interest thereon, commencing the 1st of October, 1866, and including the year 1873, with interest on the legacy of each year, from the end of the year to the 1st of July, 1874, and that the said sum of money and the legacy of $200 which shall become due at the end of each year, from the 1st of January, 1874, are a charge on, and to be paid out of, the real estate in Abbeville County which was devised by John McLarin, Sr., to John McLarin, Jr.

It is further adjudged and decreed that the defendants pay the costs and disbursements of this action.

The defendants appealed on the grounds:

1. That the demurrer to defendants', counter claim should not have been overruled by His Honor Judge Orr, and that there should be no decree against the defendants until the plaintiff shall have accounted for her administration of her testator's estate.

2. That His Honor Judge Cooke erred in deciding there was due probate of the paper purporting to be the will of John

McLarin, Sr., which would authorize it to be given in evidence in proof of a devise or as notice to a purchaser.

3. That under a proper construction of the will of John McLarin, Sr., the legacy or annuity of $200 was no charge upon the real estate and did not run with the land.

1. That if, under the will of John McLarin, Sr., there were a charge for the annuity, it fell wholly on the personalty, and in any case could not have been greater than a charge upon the realty and personalty in equal proportions.

5. That His Honor erred in not sustaining the plea of purchase for valuable consideration without notice.

6. That Janet McLarin qualified as executrix of the will of John McLarin, Jr., accepted its provisions giving her a life estate in all his property, and that such estate being more than enough to pay her legacy must be held a satisfaction of her annuity.

7. That plaintiff's claim, if anything, was a debt against the estate of John McLarin, Jr., and that payment of debts and legacies, not retaining for her own debt, was a *devastavit* for which she is responsible and for which defendants should not suffer.

8. That the circumstances of the case, the lapse of time, laches of plaintiff, and Statute of Limitations should bar the plaintiff's claim.

9. That no interest is allowed by law on arrears of annuity.

*Thomson,* for appellants.

*Burt,* contra.

Feb. 18, 1875. The opinion of the Court was delivered by

Moses, C. J. The plea of purchase for valuable consideration without notice cannot protect the appellants. The will of John McLarin, Sr., which conveyed his whole estate to John McLarin, Jr., after the life estate therein, to Agnes McLarin, was found in the office of the Judge of Probate for the County in which he lived and died. It was the proper office for the deposit of instruments of that character. A copy of it was entered in the record book of wills, with an entry in these words: "Proven by the oath of James H. Cobb, 19th June, 1837." He was one of the subscribing witnesses. As an ancient writing, it was admissible without any evidence of probate. Every circumstance necessary to establish its authority after such a lapse of time will be presumed. But when

to this is added a possession under it, commencing with the death of the testator, and continuing for over twenty years, any proof which may have been wanting to give it legal effect is supplied by inference of law, which recognizes it as what it purports to be.— *Riddlehoover et al.* vs. *Kinard et al.*, 1 Hill Ch., 378. Even when this presumption of law cannot apply, another principle intervenes, founded on the supposition that an officer charged with a duty has performed it.—*Dunkin & Littlejohn* vs. *Smith*, 2 Hill Ch., 369.

In the absence of any direction to the contrary, a charge for the payment of legacies (and in these annuities are embraced) must be met and borne by the personal property. But a testator may, by words showing his intention, exonerate his personalty entirely from such burthen and subject his real estate alone to its operation. It is always a question of intention, to be determined by the language of the instrument.—*Lupton* vs. *Lumpton*, 2 John. Ch., 623. The personal estate is the primary fund for the payment of debts and legacies; but by words of express direction, or raising a strong implication that the burthen was to be shifted and sustained by the realty, equity will execute the proposed object according to the purpose of the party when so ascertained.

Under the will of John McLarin, Sr., the nephew, John McLarin, Jr., took the whole estate, subject to the life interest of Agnes McLarin. On her death, in 1851, the annuity to Janet became a charge on the entire property which was then to vest in him, and the words are too clear to admit of a construction confining it to the personalty. Where, however, both the real and personal estate are charged by the testator, and there are no words expressing the proportions in which they are relatively to apply to the satisfaction of the charge, the personal estate must be the first fund to respond, and the real will be held only auxiliary thereto.

Sir William Grant, in *Turner* vs. *Lord Rous*, 18 Ves., 138, states the rule as follows: "The personal estate being the proper and primary fund for the payment of debts and legacies, can be exempted only by express declaration or plain and unequivocal manifestation of intention. The question generally is whether there is sufficient evidence of that intention. It is agreed that neither a charge on the land nor a direction to sell nor the creation of a term for payment will exempt the personal estate."

Janet McLarin being the legatee and devisee for life of all the estate of the testator, John McLarin, Jr., subject to several pecuniary legacies, to some of which a condition was annexed, and also executrix of his will, became at his death the owner of the whole property on which, under the will of John McLarin, Sr., her annuity was to attach. The entire rents and profits out of which it was to be raised vested in her for her lifetime—the enjoyment of both was of equal duration. The whole interest in the estate vesting in her under the will of John McLarin, Jr., any separate interest which she previously had in any portion of the property derived from a different source was extinguished—the lesser must sink in the greater. "The question is upon the intention, actual or presumed, of the person in whom the interests united. In most instances it is, with reference to the party himself, of no sort of use to have a charge on his estate, and where that is the case it will be held to sink unless something shall have been done by him to keep it on foot."—2 Spence Eq., 246, and the cases there cited.

Chancellor Kent, in *Starr* vs. *Ellis*, 6 John, 396, cites what was said by the Master of the Rolls in *Forbes* vs. *Moffatt*, 18 Ves., 389 : "It is very clear that a person becoming entitled to an estate subject to a charge for his own benefit may, if he chooses, at once take the estate and keep up the charge. A Court of equity will sometimes hold a charge extinguished where it would subsist at law, and sometimes preserve it where at law it would be merged. The question is upon the intention, actual or presumed, of the person in whom the interests are united. In most instances it is, with reference to the party himself, of no sort of use to have a charge on his own estate, and where this is the case it will be held to sink unless something shall have been done by him to keep it on foot. If it be perfectly indifferent to the party whether the charge should or should not subsist, it sinks."

If the principle rests on the intention of the party, while there is everything in this case to show that Janet McLarin accepted the legal title discharged of the trust, there is nothing to induce a contrary conclusion. She qualified as executrix of the will, and to this day no sale of any portion of the personal property has been made. The slaves were emancipated, but, for aught that is shewn, the rest of it, not consumable by use, may still be in her possession. It appears from the statement in the brief that she continued, with her nephews, (the executors,) to occupy the premises where the testator

resided in his lifetime, and no change was made in their mode and manner of living.

In 186  , after the sale of the real estate, under the judgment against John McLarin, Jr., she removed to Virginia, taking with her a portion of the property, and has not returned. Her whole course in regard to the estate, treating it exclusively as her own, clearly manifests her intention to extinguish the subordinate right to the annuity through the land by the larger enjoyment of the whole income. What has been shewn in the case, from which her intention "to keep it on foot," could even be presumed?

The view which the Court takes of the case renders it unnecessary to consider that portion of the appeal which seeks to reverse the judgment of the Circuit Court on the demurrer to so much of the answer as relates to the counter claim preferred by the defendants. It will not, however, be out of place, on this question of practice, briefly to refer to it. Where the equitable jurisdiction of the Court is invoked, anything arising out of the defense which shows that the plaintiff is not entitled to the relief he seeks will preclude his recovery. Its effect will not be lost because the defendant interposes it by way of counter claim. He cannot be deprived of its weight because he offers it as a "counter claim," if it is involved in his general defense and can operate to defeat the complaint against him. The objection that it is not within the statutory provision cannot prevail where it is incidental to the general defense and properly arises out of it.

The motion is granted, and the judgment of the Circuit Court reversed.

*Wright*, A. J., and *Willard*, A. J., concurred.